Case 1:18-cv-02991-RRM   Document 9   Filed 06/18/19   Page 1 of 8 PageID #: 1090

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 18 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Esther Herz and Libi Herz,

                               Appellants,

                                              Case No. 18-cv-2991

      V.

Moshie Solomon, P.C.
and Richard E. O'Connell as Trustee,

                               Appellees.

----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge

# FULLY BRIEFED APPEAL

Libi Herz & Esther Herz
1148 East 10th Street
Brooklyn, NY 11230
(917) 251-2848

## **SUMMARY OF ARGUMENT**

On June 9, 2015 Judge Carla E. Craig put in an Order Directing Turnover of the Estate Property to Chapter 7 trustee Richard E. O'Connell. Trustee Richard O'Connell did not fulfill his trustee duties and did not follow the court order to distribute the remaining funds from the Ellen Ruth Silverman estate. Richard E. O' Connell and Moshie Solomon were unjustly awarded $58,218.50 in legal fees.

In Appellee's brief they make frivolous accusations of us prolonging the case. That is simply inaccurate.
We have had no choice but to defend ourselves against there barrage of baseless claims. Additionally, the Trustee and his Counsel purposely did not follow the court order because they knew that in 2014 the trustee in England no longer had the right to distribute any of the funds. Therefore the trustee maliciously abandoned his rights and only cared about his administration fees.  This entire court case was based on an orchestrated lie.
Trustee and his counsel brought up numerous illegitimate claims to prolong the case starting with Lexington Insurance.
Lexington insurance was contacted by the trustee and informed them to buy old judgements against Esther Herz.
This is one example of how the trustee prolonged the case.
Lexington Insurance had an alleged claim against Esther Herz, not David Herz. The Bankruptcy proceedings never had anything to do with Esther Herz.
It was solely for David Herz who died on January 4, 2013.
We are the ones that have been harassed, and slandered.
We ask the courts to please re look at the facts.

In the CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION OF LIBI HERZ TO VACATE TURNOVER ORDER, on Page 3 (Exhibit A) paragraph 5 states:

In light of the fact there are administrative fees and expenses and claims against the estate, the Trustee is (and has been) in the process of administering the Estate in accordance with his duties under the Bankruptcy code, and the continuation of the Turnover Order is vital to his effort. The trustee, through counsel, has provided a copy of the Turnover Order to counsel for the Silberman Trustee by letter dated June 9, 2015 and has ever since remained in contact with the Silberman trustees counsel with regards to this matter.
Counsel for the Silberman Trustee had informed the trustee that the last remaining issue with respect to the administration of the Silberman estate in England was the existence of certain personal property in England that had little value of the estate, and requested that the trustee abandon the property so that the Silberman trustee can proceed to close the Silberman estate and distribute the Silberman inheritance.

This statement proves that they were in communication with the England Trustee and addresses the request of abandonment to come from the trustee in England of the Silberman estate.
This is incorrect information and part of their larger plan for getting administration fees. Upon the closing of the Bankruptcy proceedings we have made contact with the trustee in England and he stated he never made those requests nor was any documentation ever entered into court supporting this allegation. This was yet another abuse of power by Richard E. O'Connell and Moshie Solomon to put in the request as if it was coming from someone else.

2

It has now been found that the Trustee in England controlling the Ellen Ruth Silberman estate had not been in the legal parameters to control the inheritance since April 6, 2014.
This information was purposely withheld from us, and the court, by both trustees and attorneys to manipulate and take advantage of the system for there own financial gain.

Peter Alfred Birchwood as trustee for the Estate of Ellen Ruth Silberman and his acting notary republic Hugh-Anton Stephens had an agreement with another named beneficiary listed in the will. Her name was Anne Yondorf. Anne Yondorf died on April 6, 2014 which in turn made their agreement to control the funds null and void at the time of her death. They can not legally continue to control or distribute the funds unless another named beneficiary gives them that right through filing for a grant of representation. No other beneficiary in the will gave them authority to continue. The correct thing to do would have been to return the money to the treasury department in England until a grant of representation and an administrator be appointed by another beneficiary and notify the US Bankruptcy court. Trustee and his counsel hid these facts and only later abandoned their rights in lieu of them knowing this information. If this information would have been declared, it would ultimately hinder them from receiving any fees.

We have now had to hire an attorney in England who is investigating the situation and filing to get them disbarred.
This has been yet another fee incurred on our end due to the trustees negligence.

It is hard to believe that an experienced trustee does not check the validity of an agreement. Anne Yondorf, the named beneficiary who gave the former grant of representation to Peter Birchwood would have been 92 years old then.

3

There are thousands of dollars on their inflated bill showing various communications with England, so this must have been addressed.
We believe they were all working in cahoots together to receive what they could get before anyone finding out this information.

There is no detailed explanation for the breakdown of these costs other than a "costing sheet" attached as (Exhibit B) providing a breakdown of phone calls, letters and emails.
This leaves practically no adequate accounting of the funds. Billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in in increments greater than one-tenth of an hour), who performed the task, their level of experience and that persons hourly rate. In re Fibermak,Inc., 349 B.R. 385, 395 (Bankr.D.Vt. 2006).
The records must be detailed enough to enable a court to determine whether the attorneys are claiming compensation for hours that are "redundant, excessive, or otherwise unnecessary" .

In the appellees brief they make no defense of all the illegitimate and time consuming claims the invalidly raised.
One example of them intentionally prolonging the case stems from their proof claim by Chase in the amount of $5,759.96 and $1,872.54. Chase never wanted to open this case but were told by the trustee, that this would be his only way to reopen the case. They make no mention of the money being returned to us by Chase Bank. This furthermore more proves his discrepancies. They also clearly failed to the meet the documentation requirements in order to have its claim allowed.
Specifically, it failed to include a copy of the credit card agreement or a record of any transaction that is related to this claim.

4

Finally it attaches a brief account summary which merely includes a brief summary of the amount due to the debtors name and address but fails to include any account statements to show how this amount has been calculated, and failed to include a copy of the agreement authorizing the charges and fees included in the claim.
This claim is not only not entitled to prima facie validity under Bankruptcy rule 3001(f) but its claims fails to include the minimum evidence documentation to have it claim declared valid.
It should have been disallowed.

Lexington insurance who was contacted by Richard E. O'Connell acknowledged that they are were no longer creditors in the bankruptcy proceedings, withdrew one of there claims and the other two were expunged. Lexington's claims were expunged by court order dated August 30, 2016.

Furthermore to prove how we were taken advantage of are *a few lines from the transcript from Bankruptcy court.

Dated October 6, 2015 of April 24, 2018 from the JJ Court Transcriber Page 20/33 (Exhibit C) reads:

The court (Judge Carla E. Craig): If it turns out that there is no--, that there are no creditors of the estate-- then the trustee --the bankruptcy trustee does not get a fee, correct?
If you don't have anybody.

Mr. Solomon (response):
If there's no distribution to unsecured creditors that's correct. Your honor, but there will be administrative expenses for all the appearances in court there were not necessarily required by the trustee, were required by other parties, as well.

5

They continued to tell the courts that asking for $100,000 half of the inheritance was simply there way of negotiating a deal.

Dated October 6, 2015 of April 24, 2018 from JJ Court Transcriber Page 13/16 starting at line 11 it reads:

The court: That if it turns out at the end of the day, there aren't any creditors and this was just an exercise to get leverage over the Herz's, and that and to generate fees for the trustee then I'm going to be looking with a very skeptical eye at the fee application.

Page 29/33 :
The Court: Okay. Well, does the trustee have some duty to examine the validity of the claims before he runs up a lot of money in administering the estate?

Mr. Solomon: Well, your Honor, if a purpose is served, and right now, you know, if we don't even get the funds, there is no funds in the estate right now, there's nothing in the estate.

Page 18/33: Line 18:
Mr. Solomon: I just want to- the money will be safe in the trustee's account.

Page 11/16 line 22:
The court: Right. But if - I guess I'm saying what is the - if there is no-- if there isn't a creditor, or if there wasn't any creditors in this estate, then what are we doing here?

Ultimately while these questions and concerns were raised, they were not thoroughly cleared or checked. The trustee and his counsels main goal was to continually bring up illegitimate claims

6

to stretch the court proceedings for legal fees as ALL their claims were found to be baseless and without merit.

Upon filing this appeal, trustee Richard E. O'Connell personally called me and asked me to please drop this appeal as he is retiring. We believe the Trustee and his attorney were careless due to this. They manipulated the system with bogus creditors to incur administration fees. They also had no legal rights to collect the funds as there was no living or current administrator appointed in England therefore making the funds undistributable. We have still not received any portion of the inheritance.
We ask that the Honorable Judge Mauskopf, please return to us or to the estate the $58,218.50 they were awarded.
We also ask that you please return to us the $150,000 in legal fees we have had to spend in defending ourselves against all their unjust claims.

6/13/19

*Libi Herz*
Libi Herz

*E. HERZ*
Esther Herz

7